T.C. Memo. 2007-95

UNITED STATES TAX COURT

THOMAS OLAN MAXTON, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2599-05L.                    Filed April 23, 2007.

Thomas Olan Maxton, Jr., pro se.

<u>Gordon P. Sanz</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:  This case was commenced in response to a
Notice of Determination Concerning Collection Action(s) Under
Section 6320 and/or 6330 (notice of determination).[1]  The issue
for decision is whether respondent abused his discretion in

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code) as amended, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

determining that a Federal tax lien was appropriately imposed on petitioner's property with respect to tax owed for tax years 1991, 1992, and 1993.

## Background

At the time petitioner filed the petition, he resided in Pasadena, Texas. Petitioner failed to file Federal income tax returns for the tax years 1991, 1992, and 1993. Consequently, respondent prepared a substitute for return for each of those years. On May 6, 1997, respondent issued a notice of deficiency, determining deficiencies of $14,823 for 1991, $33,329 for 1992, and $25,502 for 1993. Respondent also determined that petitioner was liable for additions to tax under sections 6651(a)(1) and 6654 of $2,508 for 1991, $8,279 for 1992, and $7,222 for 1993. Petitioner did not judicially challenge these determinations.[2] On October 29, 1997, respondent assessed tax and additions to tax for tax years 1991, 1992, and 1993 as shown in the notice of deficiency, as well as interest thereon. On January 14, 2004,[3] respondent mailed petitioner a Final Notice of Intent to Levy and

---

[2]Petitioner's response to the notice of deficiency was to retain an attorney, J. Hamilton McMenamy, who, acting on behalf of petitioner, sent a letter to respondent dated July 11, 1997, raising frivolous arguments in regard to the notice of deficiency. For example, the letter demanded to know what Code section imposes a tax on petitioner and the specific tax forms petitioner was required to file to report his tax. The letter suggested that petitioner had no duty to pay taxes.

[3]It appears that petitioner may have filed for bankruptcy at some point during the 1997-2004 interim.

Notice of Your Right to a Hearing, and on May 4, 2004, respondent filed a notice of Federal tax lien on petitioner's property with the County Clerk for Harris County.  In his notice dated May 11, 2004, advising petitioner of the lien, respondent provided petitioner with detailed information about the amounts of tax that were owed, the related tax periods, and citations of the Code sections that authorize the lien filing.

On June 14, 2004, petitioner requested a hearing under section 6320 with respect to the lien, alleging that there were erroneous dates of assessment and "amounts unjustifiably entered."[4]  The request for a hearing referenced a letter dated February 4, 2004, that petitioner had written to respondent in response to respondent's final notice of intent to levy.  In that letter, petitioner advanced frivolous arguments as to why respondent's collection activities should not go forward.[5]

---

[4]Petitioner's request for a hearing did not include the proposed levy action and would not have been timely with respect to it.  See secs. 6330 and 6331.  It appears that respondent agreed to an equivalent hearing with respect to the levy.  While it is not clear whether or when an equivalent hearing was held, respondent did not issue a notice of determination with respect to the levy action.  Petitioner has not asked us to consider the levy action here, and we would not have jurisdiction to do so.  See sec. 6330(d).

[5]Petitioner, in his Feb. 4, 2004, letter, did not request a hearing but alleged that the levy action interfered with his right to due process because he had filed a civil action in the U.S. District Court for the District of Columbia.  (In his pretrial memorandum, petitioner further describes the District Court case as one involving a "Privacy Act Request".  We note

(continued...)

Petitioner's February 4, 2004, letter indicated that his representative would be Wayne A. Paul, C.P.A. (Mr. Paul). Mr. Paul's address and telephone number were included in the letter.

On September 21, 2004, respondent's settlement officer advised petitioner by letter that a telephone hearing was scheduled for October 19, 2004. In this letter, the settlement officer cautioned petitioner that the Appeals Office would not consider items that courts have determined are frivolous or groundless. Moreover, attached to the September 21 letter was a copy of this Court's decision in Pierson v. Commissioner, 115 T.C. 576 (2000), IRS Publication 2105, "Why do I have to Pay Taxes?", and also transcripts showing assessments, penalties, interest, and other items affecting petitioner's account for the tax periods involved in the collection action. The settlement officer further advised petitioner that in order to qualify for a collection alternative, petitioner had to be in compliance with current tax obligations and that respondent's records indicated that petitioner had not filed a return for any year from 1994 through 2003. The settlement officer requested additional information concerning petitioner's financial situation and

---

[5](...continued) that the case to which petitioner refers was dismissed by the District Court on Dec. 27, 2000, and a subsequent appeal in that case was dismissed on Aug. 5, 2005). Petitioner renewed his demand that respondent "produce the legal evidence of the law which gives you the statutory authority you rely upon."

solicited petitioner's proposed collection alternative. Finally, the settlement officer requested petitioner's telephone number for the purpose of holding the hearing. Petitioner responded to this last request on October 14, 2004, leaving the settlement officer a voice mail message with petitioner's telephone number and a request for a 5-day postponement of the hearing.

On October 18, 2004, petitioner sent a telefax to the settlement officer, reiterating his request for a postponement of the hearing scheduled for the next day, and then spoke with the settlement officer by telephone that same day. In the telephone conversation, petitioner informed the settlement officer that petitioner's representative, Mr. Paul, needed more time to prepare for the hearing and that Mr. Paul would explain petitioner's position and why petitioner had not furnished respondent with additional information that had been requested. The settlement officer reiterated that respondent's Appeals Office would not consider matters that courts have determined are frivolous or groundless and that the hearing would focus on collection alternatives, petitioner's compliance, and any nonfrivolous arguments. The parties agreed that petitioner would telephone the settlement officer by October 25, 2004, to reschedule the hearing.

Neither petitioner nor Mr. Paul communicated with the settlement officer by October 25, 2004. On October 27, 2004,

petitioner sent a telefax to the settlement officer indicating that Mr. Paul would be in touch with the settlement officer. When there was no further communication from petitioner or Mr. Paul by November 18, the settlement officer prepared and mailed a letter scheduling a face-to-face hearing for December 14, 2004, and reserved a conference room for that purpose.

On December 9, 2004, the settlement officer received a telefax from petitioner in which petitioner indicated that he would like to again reschedule the hearing because Mr. Paul would be out of town on the scheduled hearing date (December 14, 2004) and had not had time to prepare for the hearing. Petitioner continued to raise frivolous arguments with respect to his tax liability.[6] The settlement officer then telephoned Mr. Paul and advised Mr. Paul that respondent was not willing to schedule a hearing for a third time, and that the arguments that petitioner proposed to raise at the hearing were frivolous. The settlement officer then left a voice mail message for petitioner that the December 14, 2004, hearing would not be rescheduled.

On December 14, 2004, petitioner and Mr. Paul initiated a telephone call to the settlement officer in which they stated

---

[6]Petitioner challenged the signature of the IRS agent who signed the notice of Federal tax lien on behalf of another agent. Petitioner wrote that "I understand that Treasury Orders allow a delegation of authority to only one agent and the agent given the authority is not able to substitute that authority for someone else."

that they would proceed with the hearing by telephone. The settlement officer's notes of the telephone conversation indicate, among other things, that Mr. Paul stated that he was at a disadvantage because he had not had enough time to prepare for the hearing; that the settlement officer reminded Mr. Paul that a substantial amount of time had already been afforded him for this purpose; and that the settlement officer reiterated that petitioner's arguments were frivolous. Petitioner's version of the telephone call is that very shortly after the parties greeted one another the settlement officer terminated the conversation.

Both parties agree that at some point in their telephone conversation the settlement officer inquired whether petitioner was making an audio recording of the hearing. Petitioner and his representative confirmed that they were. The settlement officer explained to petitioner and Mr. Paul that while section 7521 permits audio recordings, advance notice of the intent to make such a recording must be given and that he had received none. Petitioner offered to turn off the recorder, but the settlement officer was not confident that he would be able to verify whether the recorder was in fact turned off and therefore ended the hearing.

Respondent's Appeals Office sustained the lien and issued the notice of determination on January 6, 2005. Petitioner filed

his petition with this Court, seeking review of respondent's determination, on February 10, 2005. This case was submitted fully stipulated pursuant to Rule 122 on December 14, 2005.[7]

## Discussion

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a taxpayer liable for taxes when a demand for payment of the taxes has been made and the taxpayer fails to pay those taxes. Section 6320(a) provides that the Secretary shall furnish the taxpayer with written notice of a Federal tax lien within 5 business days after the notice of lien is filed. Section 6320 further provides that the taxpayer may request an Appeals hearing within 30 days beginning on the day after the 5-day period described above. Sec. 6320(a)(3)(B) and (b)(1). Section 6320(c) provides that the Appeals hearing generally shall be conducted consistent with the procedures set forth in section 6330.

Section 6330(c) provides for review with respect to collection issues such as spousal defenses, the appropriateness of the Commissioner's proposed collection actions, and the possibility of collection alternatives. Sec. 6330(c)(2)(A). The taxpayer may also challenge the amount of the underlying tax liability if the taxpayer did not receive a statutory notice of

---

[7]This matter was submitted for disposition by order of the Chief Judge to Judge Julian I. Jacobs on Feb. 13, 2007.

deficiency or did not otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B).

Pursuant to section 6330(d)(1), within 30 days of the issuance of a notice of determination, the taxpayer may appeal the determination to this Court if we have jurisdiction over the underlying tax liability. Where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181 (2000). Where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's determination for an abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181.

Petitioner received a statutory notice of deficiency for the years in issue, and thus his underlying tax liability is not properly at issue. Accordingly, we review respondent's determination for an abuse of discretion. See Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181. Petitioner argues that the settlement officer abused his discretion by terminating the telephone conference of December 14, 2004. The termination of the telephone call effectively negated the hearing, according to petitioner, so that he did not receive the hearing required by section 6330. We disagree.

Hearings conducted under section 6330 are informal proceedings, not formal adjudications. Katz v. Commissioner, 115 T.C. 329, 337 (2000); Davis v. Commissioner, 115 T.C. 35, 41 (2000); Ho v. Commissioner, T.C. Memo. 2006-41. Taxpayers are generally entitled to a face-to-face hearing at the Appeals Office nearest their residence. Sec. 301.6320-1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs. Where the taxpayer declines to participate in a proffered face-to-face hearing, hearings may be conducted by telephone or correspondence. Katz v. Commissioner, supra at 337-338; Ho v. Commissioner, supra; sec. 301.6320-1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs. The Court of Appeals for the Fifth Circuit, to which an appeal in this case would lie, has held that a face-to-face hearing is not required where the taxpayer's proffered arguments are frivolous. Burnett v. Commissioner, No. 06-60908 (5th Cir., Apr. 12, 2007). Furthermore, once the taxpayer has been given reasonable opportunity for a hearing but has failed to avail himself of that opportunity, we have approved the making of a determination to proceed with collection on the basis of the Commissioner's review of the case file; i.e, in the absence of any hearing. See, e.g., Ho v. Commissioner, supra; Taylor v. Commissioner, T.C. Memo. 2004-25, affd. 130 Fed. Appx. 934 (9th Cir. 2005); Leineweber v. Commissioner, T.C. Memo. 2004-17; Armstrong v. Commissioner, T.C. Memo. 2002-224.

Section 7521(a)(1) provides that a taxpayer, in connection with an interview and upon advance request, will be allowed to make an audio recording of the interview. See Notice 89-51, 1989-1 C.B. 691, for IRS guidelines requiring advance notice of intent to record. Petitioner did not make an advance request to record the hearing as required in section 7521(a)(1). Furthermore, given that the hearing occurred, and that petitioner does not assert that he raised collection alternatives that were not considered by, or were not reflected in the case activity records of, the settlement officer, we do not consider the issue of recording decisive. Petitioner simply has not claimed or shown prejudice in the failure to permit recording. See Frey v. Commissioner, T.C. Memo. 2004-87; Durrenberger v. Commissioner, T.C. Memo. 2004-44; Brashear v. Commissioner, T.C. Memo. 2003-196; Kemper v. Commissioner, T.C. Memo. 2003-195.

The record establishes that petitioner advanced only frivolous, groundless arguments and assertions. Petitioner failed to raise any relevant issues of merit. At no point in the collection proceedings did petitioner offer any alternatives to collection. Any possibility that petitioner might have had a valid claim to make if the telephone hearing had continued was dispelled at the trial of this case.[8] At that time, the Court

_____

[8]Indeed, we denied respondent's motion for summary judgment on Dec. 8, 2005, in order that petitioner would have an opportunity to present valid arguments.

asked petitioner whether he wished to testify, to call witnesses, or to introduce any other evidence. Petitioner declined to do any of these things. After the trial, petitioner filed a brief in which he admitted that he had not been prepared to introduce any new matters at the hearing, and he persisted with his vague assertion that this case involves "erroneous dates of assessment and amounts unjustifiably entered."

In the light of the above and considering petitioner's frivolous assertions and arguments, a further hearing in this case (recorded or not) would not have been, nor would it be, productive. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Bean v. Commissioner, T.C. Memo. 2006-88. Moreover, under the circumstances, petitioner has given us no reason to believe that remanding this matter to the Appeals Office would in any way advance the policies underlying section 6330. Thus, we conclude that a remand is unwarranted.

The record reflects that the Appeals Office properly verified that all applicable laws and administrative procedures governing the assessment and collection of petitioner's unpaid tax liabilities were met. On the basis of this record, we conclude as a matter of law that respondent did not abuse his discretion. Respondent's determination that the filing of a notice of Federal tax lien was appropriate is sustained.

Section 6673(a)(1) authorizes this Court to require a taxpayer to pay the United States a penalty in an amount not to

exceed $25,000 whenever it appears to the Court the taxpayer's position is frivolous or groundless.  Sec. 6673(a)(1)(B). Respondent has asked us to impose a penalty against petitioner under section 6673(a).  We have imposed a penalty under section 6673 on taxpayers who have raised arguments similar to those petitioner has raised.  See, e.g., Roberts v. Commissioner, 118 T.C. 365 (2002), affd. per curiam 329 F.3d 1224 (11th Cir. 2003); Pierson v. Commissioner, 115 T.C. 576 (2000).  We will not impose a penalty here, but we caution petitioner that in the future should he bring similar arguments before this Court, the Court is likely to impose such a penalty.

To reflect the foregoing,

Decision will be entered

for respondent.